**Lucille HOLMES, Plaintiff,**

v.

**ALLSTATE INSURANCE COMPANY, Defendant.**

**C.A. No. 2:08–CV–2232–PMD.**

United States District Court,
D. South Carolina,
Charleston Division.

May 7, 2009.

George J. Kefalos, George J. Kefalos Law Office, Charleston, SC, for Plaintiff.

W.C. Barnes, Jr., Turner Padget Graham and Laney, Florence, SC, for Defendant.

## ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the court upon cross-motions for summary judgment filed by Plaintiff Lucille Holmes and Defendant Allstate Insurance Company ("Allstate"). For the reasons set forth below, the court grants Defendant Allstate's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

### BACKGROUND

Some time before the events giving rise to this suit occurred, Plaintiff Lucille Holmes ("Plaintiff") had a personal relationship with a Mr. Willie Williams. The record suggests that Williams never got over the fact that his relationship with Plaintiff ended. At trial, Plaintiff testified that, after their relationship ended, he would send her letters indicating that "he

was going to shoot [her] or shoot [her] legs from under her if he ever saw her again." Plaintiff further testified that Williams would follow her and her husband, Jim, around town in his car; so much in fact, her husband bought a new truck so that Williams would not recognize them while driving. This alleviated the problem of Williams following them around town until Wednesday, March 24, 2004, when Plaintiff and her husband ran into Williams at a local bank, and Williams observed them in the new truck.

On March 25, the next day, Plaintiff and her husband went to a friend's house so her husband could clean the friend's carpet. While at her friend's house, Plaintiff noticed Williams slowly driving back and forth in front of the house. Sometime later in the day, Plaintiff left her friend's house to pick up a neighbor's child at a local school bus stop. Williams happened to still be driving around town and noticed Plaintiff drive past him—in the opposite direction—on her way to the bus stop. He turned his vehicle around to go after her.[1] He eventually found Plaintiff parked on the side of the road awaiting the arrival of the school bus and stopped his car next to her window. Plaintiff heard Williams say, "Lucille,"[2] and as she looked over at him, he aimed a handgun at her and shot her several times, resulting in serious bodily injury. Williams immediately left the scene. The school bus was approaching its stop when Williams shot Plaintiff, and the bus driver witnessed the crime.

On August 25, 2005, Plaintiff filed a civil suit against Williams, seeking damages for the gunshot wounds he inflicted upon her. The jury awarded Plaintiff $50,000 in actual damages and $200,000 in punitive damages, and Plaintiff now seeks to recover

these amounts from both Williams' Allstate liability coverage as well as her Allstate underinsured motorist coverage. At the time of this incident, Allstate insured Williams under an automobile policy with liability coverage limits of $15,000 per person and insured Plaintiff under an automobile policy issued to her husband that provided underinsured motorist coverage of $200,000 per person. Both policies covered injuries "arising out of the ownership, maintenance, or use" of the automobiles.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir.1990). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir.1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The

---

**1.** At trial, Williams testified that Plaintiff made a hand gesture to him when he drove by which angered him.

**2.** At trial, Williams's testimony slightly differed in that he remembered a short, verbal exchange taking place before he shot Plaintiff.

"obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir.1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir.1990)). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548.

### ANALYSIS

■ The issue before the court is whether Plaintiff's injuries arose out of the ownership, maintenance, or use of either Plaintiff's or Williams' vehicle. Under South Carolina law, no automobile insurance policy may be issued or delivered in this state, "unless it contains a provision insuring the persons defined as insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use" of a motor vehicle. S.C.Code Ann. § 38–77–140. In *State Farm & Cas. Co. v. Aytes*, the South Carolina Supreme Court instructed that an injury arises out of the ownership, maintenance, or use of an automobile if: (1) there is a causal connection between the vehicle and the injury; (2) no act of independent significance occurred which broke the causal link; and (3) the vehicle was being used for transportation at the time of the assault. 332 S.C. 30, 33, 503 S.E.2d 744, 745 (1998).

■ The first element of the *Aytes* test requires a causal connection to exist between the vehicle and the injury. "In this context, causal connection means: (a) the vehicle was an 'active accessory' to the assault; and (b) something less than proximate cause but more than mere site of the injury; and (c) that the 'injury must be foreseeably identifiable with the normal use of the automobile.'" *State Farm Mut. Ins. Co. v. Bookert*, 337 S.C. 291, 523 S.E.2d 181 (1999) (citing *Aytes*, 332 S.C. at

33, 503 S.E.2d at 745–46). "The required causal connection does not exist when the only connection between an injury and the insured vehicle's use is the fact that the injured person was an occupant of the vehicle when the [injury] occurred." *Aytes*, 332 S.C. at 33, 503 S.E.2d at 746. With regard to the vehicle covered by her husband's insurance policy, Plaintiff merely occupied this vehicle at the time Williams shot her, as she parked it on the side of the road in anticipation of the school bus's arrival. Thus, her injuries did not arise out of the ownership, maintenance, or use of the vehicle insured by her husband's Allstate policy.

■ Determining whether or not a causal connection exists between Williams' use of his vehicle and the gunshot injuries he ultimately inflicted upon Plaintiff requires a review of prior case law that has addressed this issue. Allstate contends that the two vehicles were merely the site of the shooting; therefore, a causal connection does not exist between Williams' use of his vehicle and Plaintiff's injuries. Plaintiff contends that a causal connection does exist, as "the gunshot was the culmination of an ongoing assault, in which the vehicle played an essential part, and only a motor vehicle could have provided [Williams] a quick and successful escape." Plaintiff supports her contention by directing the court's attention to *Wausau Underwriters Insurance Company v. Howser*, 309 S.C. 269, 422 S.E.2d 106 (1992) and *Home Insurance Co. v. Towe*, 314 S.C. 105, 441 S.E.2d 825 (1994).

In *Wausau Underwriters Ins. Co. v. Howser*, the South Carolina Supreme Court considered the question of whether an insurer was liable, pursuant to S.C.Code Ann. § 38–77–140, for gunshot injuries sustained by a person traveling on a public highway and inflicted during a vehicular chase by an unknown operator of

an unidentified vehicle. 309 S.C. at 272, 422 S.E.2d at 107–08. In the case, Howser was driving down a public highway when an unidentified assailant used his vehicle to bump her vehicle from behind. Howser attempted to speed away from the assailant, but the assailant continued to pursue Howser and rammed his vehicle into hers on two more occasions. At some point, Howser managed to evade the assailant, but not before the assailant fired a gunshot at her car, which struck and injured her. Neither the assailant nor his vehicle was ever identified. In finding that a causal connection existed between the use of the assailant's vehicle and Howser's injuries, the court considered the assailant's vehicle to be an active accessory to the assault on Howser as "only through the use of his vehicle was the assailant able to closely pursue Howser … and carry out the pistol assault.... Additionally, only a motor vehicle could have provided the assailant with a quick and successful escape." *Id.* at 273, 422 S.E.2d at 108.

In *Home Insurance Co. v. Towe,* the South Carolina Supreme Court found that a causal connection existed between an assailant's use of his vehicle and the injuries sustained by the driver of a tractor. 314 S.C. 105, 106, 441 S.E.2d 825, 826 (1994). In *Towe,* Brian Towe drove a vehicle in which Jerry Alexander was a passenger. At some point, Alexander threw a bottle from the moving vehicle at a road sign, but instead of striking the sign, the bottle shattered on the steering wheel of a tractor that was being driven in the opposite direction. The bottle seriously injured the driver of the tractor and caused minor damage to the tractor itself. The South Carolina Supreme Court determined that a causal connection did exist between Towe's use of his vehicle and the injuries sustained by the driver of the tractor, as "[t]he use of the automobile placed Alexander in the position to throw the bottle at the sign and the vehicle's speed contribut-

ed to the velocity of the bottle increasing the seriousness" of the injuries inflicted upon the driver of the tractor. As such, the court determined that Towe's car was an active accessory that gave rise to the injuries sustained. Like *Howser,* the court considered the "use of the automobile and Alexander's throwing of the bottle … 'inextricably linked' as one continuing act." *Id.* at 108, 441 S.E.2d at 827.

Although Plaintiff relies on these precedents to establish that Williams' vehicle acted as an active accessory in the assault on Plaintiff because it enabled him "to closely pursue [Plaintiff], thereby enabling him to shoot her while she was in her vehicle," the court, after careful consideration, is not convinced that the events underlying this dispute invoke the conclusions reached in either *Howser* or *Towe.* In *Howser,* the court found a causal connection based on its consolidation of both the vehicular chase and the gunshot assault as a single "ongoing assault." This categorization stemmed from the assailant's use of his vehicle to ram Howser's vehicle numerous times as it continuously pursued her in a chase on a public highway and from the assailant's reliance on his vehicle to keep up with Howser's position to shoot her. Likewise, in *Towe,* the South Carolina Supreme Court considered the assailant's vehicular movement and the ultimate assault as a single continuing act because the movement of the vehicle increased the severity of the assault. In this case, it's not so clear that Williams' use of his vehicle was such an active accessory to his ultimate assault on Plaintiff.

Unlike *Howser,* Williams did not use his vehicle to assault Plaintiff, as nothing in the record indicates that Plaintiff knew Williams was approaching her as she waited at the school bus stop or that Williams' vehicle ever made contact with Plaintiff's. Nor was Plaintiff traveling in her vehicle

at the time Williams fired the gun, thus making Williams' position in relation to Plaintiff dependant on the use of his vehicle. Moreover, unlike *Towe*, Williams' use of his car did not increase the severity of potential harm inflicted by his gunshots. He merely used his car to approach Plaintiff, stopped his car next to her parked car, fired several gunshots at Plaintiff, and drove off. Thus, unlike the incidents giving rise to the South Carolina Supreme Court's decisions in *Howser* and *Towe*, the court does not find that Williams' car acted as an active accessory to his assault on Plaintiff.

■ Even if Williams' use of his vehicle should be considered an active accessory to his assault on Plaintiff, the South Carolina Supreme Court's opinion in *State Farm Mutual Automobile Insurance Co. v. Bookert*, 337 S.C. 291, 523 S.E.2d 181 (1999), which addressed a factual scenario similar to the one presented here, precludes a finding that a causal connection exists between Williams' use of his vehicle and his assault on Plaintiff. In *Bookert*, the victim, while standing in front of a fast-food restaurant, was shot by an assailant who fired from a moving vehicle in the parking lot. Similar to Plaintiff's argument, the South Carolina Court of Appeals found that a causal connection existed between the use of the vehicle and the victim's injuries, as the vehicle was used as a "launching pad" for the assailant's assault. *State Farm Mut. Auto. Ins. Co. v. Bookert*, 330 S.C. 221, 232, 499 S.E.2d 480, 486 (S.C.Ct.App.1998). The South Carolina Supreme Court, however, reversed the court of appeals' decision. Despite the facts that the vehicle transported the assailant to the scene, that the vehicle circled the parking lot before positioning assailant in front of the victim, and that the vehicle moved while assailant shot the victim so as to make an escape easier, the Supreme Court found that the insurance policy did not cover the victim's injuries because the injuries were not "foreseeably identifiable with the normal use of an automobile." *Bookert*, 337 S.C. at 293, 523 S.E.2d at 182. In this case, Williams appears to have used his vehicle in the same manner in which the vehicle was used in *Bookert*: to locate Plaintiff, to position himself next to Plaintiff's vehicle, and to leave the scene of the crime. While Plaintiff likens the assault on her with that of a drive-by shooting, *Bookert* establishes that such use of a vehicle will not satisfy the causal connection requirement necessary to invoke insurance coverage, since such conduct is not foreseeably identifiable with the normal use of an automobile. Thus, the court does not find that a causal connection exists between Williams' use of his vehicle and Plaintiff's injuries.

## CONCLUSION

Therefore, based on the foregoing, it is **ORDERED** that Defendant Allstate Insurance Company's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED.**

**AND IT IS SO ORDERED.**