# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Progressive Direct Insurance Co., and USAA General Indemnity Company, Respondents,

v.

Shanna Groves, as the Personal Representative of the Estate of Lynn Harrison, Appellant.

Appellate Case No. 2017-001946

Appeal From Dorchester County
Alison Renee Lee, Circuit Court Judge

Opinion No. 5750
Submitted April 15, 2020 – Filed July 22, 2020

## REVERSED AND REMANDED

John Phillips Linton, Jr., of Walker Gressette Freeman & Linton, LLC, of Charleston, and Ryan Harris Sigal, of Miller, Dawson, Sigal & Ward, LLC, of North Charleston, for Appellant.

Wesley Brian Sawyer, of Murphy & Grantland, PA, of Columbia, for Respondents.

**GEATHERS, J.:** In this declaratory judgment action, Shanna Groves, as personal representative of the Estate of Lynn Harrison ("the Estate"), appeals the circuit court's order granting summary judgment to Progressive Direct Insurance Co. and USAA General Indemnity Company (collectively "Respondents"). The underlying action arises out of a vehicle-to-vehicle shooting perpetrated by Jimi Carl Redman,

Jr. against Lynn Harrison. Respondents brought suit against the Estate seeking a declaratory judgment that the killing was not covered by Harrison's uninsured or underinsured motorist policies obtained through Respondents. On appeal, the Estate argues the circuit court erred in concluding that 1) Redman's vehicle was not causally connected to the killing, and 2) Redman's firing of a gun was an intervening act of independent significance that broke any causal connection between his use of the vehicle and the killing. We reverse and remand.

## FACTS

On April 2, 2015, Lynn Harrison was driving a 2010 GMC eastbound on East Carolina Road, which became Old Trolley Road just before it intersected Bacon's Bridge Road in Summerville. At the same time, Jimi Carl Redman, Jr. was driving a red Ford Escape eastbound on Old Trolley Road in the lane directly to Harrison's right. Harrison and Redman had not previously met and did not know each other.[1] As both vehicles approached the intersection, a witness saw Redman blowing kisses and making hand gestures toward Harrison. When Harrison and Redman reached the intersection, the light turned red and both vehicles stopped. Moments later, Redman pointed a rifle at Harrison and shot in her direction. The bullet went through the passenger window of Harrison's vehicle, striking her in the neck and killing her. Redman then drove through the red light and fled before being apprehended a few blocks away. Harrison's car rolled slowly through the intersection before coming to a stop on the median.

Redman's Ford Escape was either uninsured or underinsured at the time of the attack. Conversely, Harrison's husband had a South Carolina motorcycle insurance policy through Progressive[2] and a South Carolina auto insurance policy through USAA. At the time of the shooting, Harrison lived with her husband, both policies were in full force, and both policies contained uninsured and underinsured motorist coverage. The Progressive policy provided in relevant part:

> If you pay the premium for this coverage, we will pay for damages that an insured person is legally entitled to recover from the owner or operator of:

---

[1] The record reveals that Redman traveled to Dorchester County from Texas, and it appears that his killing of Harrison was a random act of violence.

[2] *See Burgess v. Nationwide Mut. Ins. Co.*, 373 S.C. 37, 41, 644 S.E.2d 40, 42 (2007) ("[A]s a general proposition, UIM coverage follows the individual insured rather than the vehicle insured, that is, UIM coverage, like UM, is 'personal and portable.'").

> 1) an uninsured[3] motor vehicle because of bodily
> injury:
> > a) sustained by an insured person;
> > b) caused by an accident; and
> > c) arising out of the ownership, maintenance
> > or use of an uninsured motor vehicle[.]

Similarly, the USAA policy provided:

> We will pay for the following damages which a covered
> person is legally entitled to recover from the owner or
> operator of an uninsured[4] motor vehicle because of an
> auto accident:
> > 1) BI sustained by a covered person; and
> > 2) injury to or destruction of the property of a covered
> > person.
> The owner's or operator's liability for these damages must
> arise out of the ownership, maintenance or use of the
> uninsured motor vehicle.

On August 7, 2015, Progressive filed a complaint against the Estate seeking a declaratory judgment finding that the policy it issued did not provide uninsured motorist coverage[5] for Harrison's death. On September 17, 2015, Progressive and USAA filed an amended complaint, adding USAA as a plaintiff and seeking a declaratory judgment that neither of their policies provided coverage for Harrison's death. On November 3, 2015, the Estate filed its answer to the amended complaint. On May 9, 2016, Respondents moved for summary judgment and, on January 27, 2017, the Estate filed a cross-motion for summary judgment.

---

[3] Except for the words uninsured and underinsured, the Progressive underinsured motorist policy is virtually identical to the uninsured motorist policy.

[4] The USAA underinsured motorist policy is virtually identical to the uninsured motorist policy except for the use of the word underinsured instead of uninsured and the following limitation found in the underinsured policy: "However, this does not include damage to property owned by the covered person while contained in your covered auto."

[5] Respondents assert there is no meaningful difference between the uninsured motorist coverage and the underinsured motorist coverage for the purposes of this appeal.

On February 17, 2017, the circuit court held a hearing and heard arguments on both summary judgment motions. On August 7, 2017, the circuit court entered an order granting summary judgment in favor of Respondents and denying the Estate's summary judgment motion. In its order, the circuit court determined that Harrison's death did not arise out of Redman's ownership, maintenance, or use of a vehicle because there was no causal connection between Redman's use of the vehicle and Harrison's death. Additionally, the circuit court concluded that even if there was a causal connection between Redman's use of the vehicle and Harrison's death, Redman's act of shooting a rifle out of the vehicle was an intervening act of independent significance that broke any causal connection between the use of the vehicle and the assault. This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err in concluding that Redman's vehicle was not causally connected to the killing?

2. Did the circuit court err in concluding that Redman's firing of a gun was an intervening act of independent significance that broke any causal connection between his use of the vehicle and the killing?

## STANDARD OF REVIEW

"In reviewing a motion for summary judgment, the appellate court applies the same standard of review as the [circuit] court under Rule 56(c), SCRCP." *Cowburn v. Leventis*, 366 S.C. 20, 30, 619 S.E.2d 437, 443 (Ct. App. 2005). "Pursuant to Rule 56(c), SCRCP, summary judgment may be affirmed if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id*. "On appeal from summary judgment, the reviewing court must consider the facts and inferences in the light most favorable to the nonmoving party." *Id*. (quoting *Cantrell v. Green*, 302 S.C. 557, 559, 397 S.E.2d 777, 778 (Ct. App. 1990)). In other words, appellate courts must "liberally construe the record in favor of the nonmoving party and give the nonmoving party the benefit of all favorable inferences that might reasonably be drawn therefrom." *Estes v. Roper Temp. Servs., Inc.*, 304 S.C. 120, 121, 403 S.E.2d 157, 158 (Ct. App. 1991).

## LAW/ANALYSIS

The Estate argues the circuit court erred in concluding that Harrison's death did not arise out of Redman's ownership, maintenance, or use of his vehicle. Respondents argue the circuit court's conclusion is proper because 1) there was no

causal connection between Redman's vehicle and the assault; and 2) Redman's firing of a gun was an intervening act of independent significance that broke any causal connection between his use of the vehicle and the assault. We agree with the Estate.

Pursuant to South Carolina law, no automobile insurance policy may be issued in this state unless it includes uninsured motorist coverage. *Nationwide Mut. Ins. Co. v. Erwood*, 373 S.C. 88, 91, 644 S.E.2d 62, 63 (2007); *see also* S.C. Code Ann. § 38-77-150(A) (2015) (requiring that any insurance policy issued in South Carolina include uninsured motorist coverage). Accordingly, "[a]n insured is legally entitled to recover damages arising out of the 'ownership, maintenance, or use' of an uninsured vehicle." *State Farm Fire & Cas. Co. v. Aytes*, 332 S.C. 30, 33, 503 S.E.2d 744, 745 (1998) (quoting S.C. Code Ann. § 38-77-140 (1989)). In *Aytes*, our supreme court laid out a three-part test for determining whether an injury arises out of the ownership, maintenance, or use of an uninsured vehicle. *Id.* To satisfy the test, a party must establish the following elements:

> 1) There exists a causal connection between the vehicle and the injury; and
> 2) No act of independent significance breaks the causal link; and
> 3) The vehicle is being used for transportation at the time of the assault.

*State Farm Mut. Auto. Ins. Co. v. Bookert*, 337 S.C. 291, 293, 523 S.E.2d 181, 182 (1999) (citing *Aytes*, 332 S.C. at 33, 503 S.E.2d at 745).

Here, it is undisputed that both Harrison and Redman's vehicles were being used for transportation at the time of the shooting. Therefore, whether Harrison's killing falls within the uninsured motorist coverage of Respondents' policies hinges on the remaining two elements. We will address each element in turn.

## I.  Causal connection

The Estate argues the circuit court erred in concluding that there was no causal connection between Redman's vehicle and the killing because 1) the vehicle was an active accessory to the shooting; 2) the vehicle was more than the mere situs of the fatal injury; and 3) Harrison's death was foreseeably identifiable with the normal use of a vehicle. Respondents argue the circuit court properly determined that no causal connection existed because 1) Redman's vehicle was not an active accessory to the shooting; 2) Redman's vehicle was merely the site from which he fired the gun; and

3) gunshot injuries are not foreseeably identifiable with the normal use of a vehicle. We agree with the Estate.

Our courts have indicated that a causal connection means:

> a) the vehicle was an "active accessory" to the assault; and
> b) something less than proximate cause but more than mere site of the injury; and
> c) that the "injury must be foreseeably identifiable with the normal use of the automobile."

*Bookert*, 337 S.C. at 293, 523 S.E.2d at 182.

A) Active accessory to the assault

The Estate argues the circuit court erred in concluding that Redman's vehicle was not an active accessory to the assault because, but for the vehicle, Redman would not have been in a position to shoot Harrison. The Estate further contends that Redman would not have been able to follow Harrison to the stoplight without the use of the vehicle. Respondents argue the circuit court's conclusion was proper because Redman's position was not dependent on his use of the vehicle. Respondents further contend that Redman's use of the vehicle did not contribute to the shooting because Redman could have walked up to Harrison's vehicle off the street or after exiting his own vehicle before shooting her.

The Estate argues the facts in the record are similar to the facts of *Wausau Underwriters Ins. Co. v. Howser*[6] and *Home Ins. Co. v. Towe*,[7] further asserting that the circuit court erred in distinguishing those cases from the case at bar. In *Howser*, our supreme court found that a vehicle was an active accessory to a vehicle-to-vehicle shooting. 309 S.C. at 273, 422 S.E.2d at 108. On a summer night in 1987, Howser and a friend were driving home after leaving a bowling alley. *Id*. at 270–71, 422 S.E.2d at 107. The two stopped at an intersection and drove about one-tenth of a mile when they were bumped by another vehicle. *Id*. at 271, 422 S.E.2d at 107. The unknown vehicle bumped Howser's vehicle two more times, and Howser accelerated her vehicle. *Id*. The unknown driver then pulled alongside Howser, shouted at her to slow down and stop, and pointed a pistol at the passenger window. *Id*. Howser made a quick left turn onto a side street but as she completed her turn, the unknown driver shot at her vehicle. *Id*. The bullet entered the vehicle,

---

[6] 309 S.C. 269, 422 S.E.2d 106 (1992).
[7] 314 S.C. 105, 441 S.E.2d 825 (1994).

fragmented, and hit Howser's back in three places. *Id*. Notably, the supreme court observed that, "[t]he injuries that Howser sustained were the result of the gunshot[,]" further pointing out that "[n]either Howser nor Shealy w[ere] hurt when the other vehicle bumped [Howser's vehicle]." *Id*. Following the shooting, the unknown driver fled and was never captured. *Id*.

The supreme court held that it was "apparent that the unknown vehicle was an active accessory to th[e] assault." *Id*. at 273, 422 S.E.2d at 108. The court noted that the case was not one in which the assailant merely used his vehicle to provide transportation to the shooting, nor was it a case in which the assailant "happened, incidentally, to be sitting in a stationary vehicle at the time of the attack." *Id*. Rather, the court found that "*[o]nly through [the] use of his vehicle was the assailant able to closely pursue Howser*, thereby enabling him to carry out the pistol assault." *Id*. (emphasis added). Accordingly, the court determined that "[t]he gunshot was the culmination of an ongoing assault, in which the vehicle played an essential and integral part." *Id*. The court further noted that "only a motor vehicle could have provided the assailant a quick and successful escape." *Id*.

Similarly, in *Towe*, our supreme court concluded that a vehicle was an active accessory to an assault. 314 S.C. at 107, 441 S.E.2d at 827. Towe was driving when his passenger threw a bottle from the vehicle at a road sign. *Id*. at 106, 441 S.E.2d at 826. Instead of hitting the sign, the bottle shattered on the steering wheel of a tractor being driven by the victim in the opposite direction. *Id*. The supreme court held the vehicle was an active accessory to the attack because "*[t]he use of the automobile placed [the passenger] in the position to throw the bottle at the sign* and the vehicle's speed contributed to the velocity of the bottle[,] increasing the seriousness of [the victim]'s injuries." *Id*. at 107, 441 S.E.2d at 827 (emphasis added).

Here, in determining that Redman's vehicle was not an active accessory to the shooting, the circuit court made the following distinctions between the facts at bar and the facts of *Howser* and *Towe*: 1) Redman did not use his vehicle to keep up with Harrison's vehicle; 2) Redman's vehicle did not make contact with Harrison's vehicle; 3) there was no evidence that Harrison saw Redman driving beside her or that she was aware of him making hand gestures toward her;[8] 4) Redman's use of the

---

[8] We find the circuit court improperly determined this lack of evidence distinguished the facts at bar from *Howser* and *Towe*. Notably, there is no evidence in the record indicating that Harrison was unaware of Redman. The sole witness to the attack indicated she was driving in the left lane *behind* Harrison at the time Redman was

vehicle did not contribute to the severity of Harrison's injury; and 5) Harrison made no attempt to evade Redman. We find that the circuit court erred in relying on these distinctions.

First, like the two vehicles in the present case, the vehicles in *Towe* never made contact. Moreover, similar to the present case, there was no evidence that the driver of the tractor was aware of the passenger before he threw the bottle, and the tractor's driver made no attempt to evade the vehicle. Second, in *Howser*, the use of the vehicle did not contribute to the severity of Howser's injuries because Howser's injuries, like Harrison's, were the result of the shooting. Additionally, while the assailant bumped Howser's vehicle, the supreme court noted that this act did not cause Howser's injuries. Therefore, the circuit court's distinction of *Howser* from the present case on the ground of vehicle-to-vehicle contact was not meaningful. Finally, the facts of the case at bar are on all fours with the facts in *Howser*. We note that the stoplight, where Redman was able to quickly catch up with Harrison and shoot her, may have been the only thing that prevented Redman's pursuit of Harrison from turning into an extended chase as in *Howser*. Accordingly, we do not find that the brevity of Redman's pursuit, resulting from Harrison's compliance with the stoplight, distinguishes *Howser* from the case at bar. In fact, Howser only traveled one-tenth of a mile before being bumped a few times and then making an evasive maneuver onto a side street before being fired upon.

The circuit court erred in finding Redman's vehicle was not an active accessory to the shooting by overlooking one significant factor consistent between *Howser*, *Towe*, and the case at bar; but for the use of the vehicles, the assailants would not have been in a position to injure the victims. *See Howser*, 309 S.C. at 273, 422 S.E.2d at 108 ("*Only through [the] use of his vehicle was the assailant able to closely pursue Howser, thereby enabling him to carry out the pistol assault*." (emphasis added)); *Towe*, 314 S.C. at 107, 441 S.E.2d at 827 ("The use of the automobile *placed [the passenger] in the position* to throw the bottle at the sign . . . ." (emphasis added)). Here, the record indicates that Redman drove beside Harrison, making hand gestures at her until the two stopped at a red light. Therefore, whether or not Harrison saw Redman, it is apparent that *Redman saw Harrison* at some point before the two drove down the street and stopped at the light. After spotting Harrison, Redman used his vehicle, like the assailant in *Howser,* to closely

blowing kisses and gesturing towards Harrison. Consequently, the fact that the witness did not see Harrison react to Redman through Harrison's back window and driver seat does not lead to the conclusion that Harrison was unaware of Redman or his actions.

pursue her to the point where he shot her.  Had Redman not been in his vehicle, he would not have been able to keep pace with and follow Harrison.  In other words, but for Redman's use of his vehicle, he would not have been in a position to shoot Harrison.

Two additional factors support the conclusion that Redman's vehicle was an active accessory to the shooting.  First, like the assailant in *Howser*, Redman used his vehicle to immediately flee the scene.  While the assailant in *Howser* was able to successfully flee and avoid apprehension, the mere fact that Redman was eventually arrested does not diminish the fact that his vehicle was used to flee the scene.  Second, unlike the assailants in *Howser* and *Towe*, Redman's vehicle contributed to the concealment of his weapon.  The weapons used in *Howser* and *Towe*, a pistol and a bottle, respectively, do not require the use of a vehicle to be transported inconspicuously, and could easily be hidden in an assailant's waistband.  Here, Redman used a rifle to shoot Harrison.  Had Redman not been in a vehicle, he likely could not have transported his rifle down a public street to the stoplight where he shot Harrison without drawing her attention, the attention of law enforcement, or the attention of the public at large to the weapon.  However, through the use of his vehicle, Redman was able to transport his rifle down the street without notice until he was in position to shoot Harrison.  For the foregoing reasons, we find the circuit court erred in concluding Redman's vehicle was not an active accessory to the shooting.

Respondents argue the circuit court properly determined Redman's vehicle was not an active accessory to the shooting because the facts of the case at bar are more similar to the facts of *Holmes v. Allstate Ins. Co.*, 786 F. Supp.2d 1022 (D.S.C. 2009).  In *Holmes*, the U.S. District Court for the District of South Carolina found that a vehicle was not an active accessory to an assault.  786 F. Supp.2d at 1027.  Holmes and her ex-boyfriend broke up, and he began stalking Holmes, which included following her around town in his vehicle.  *Id*. at 1023–24.  One day, Holmes went to a friend's house and noticed her ex-boyfriend driving back and forth in front of the house.  *Id*. at 1024.  Later, Holmes left to pick up her neighbor's child at a local school bus stop.  *Id*.  Holmes's ex-boyfriend happened to be driving around and saw Holmes drive past him before turning to follow her.  *Id*.  Holmes's ex-boyfriend eventually found Holmes parked on the side of the road awaiting the arrival of the school bus.  *Id*.  Holmes's ex-boyfriend then shot Holmes several times before fleeing.  *Id*.

In determining that the ex-boyfriend's vehicle was not an active accessory to the assault, the district court noted nothing in the record indicated that Holmes was aware that her ex-boyfriend was approaching or that the ex-boyfriend's vehicle made

contact with Holmes's vehicle. *Id*. at 1026. The court further considered the fact that the ex-boyfriend's use of his vehicle did not increase the severity of the harm caused by the gunshots. *Id*. at 1027. Rather, the ex-boyfriend "merely used his car to approach [Holmes], stopped his car next to her parked car, fired several gunshots at [Holmes], and drove off." *Id*. Thus, the court explained that the case was one in which the ex-boyfriend merely "used his vehicle . . . to locate [Holmes], to position himself next to [Holmes]'s vehicle, and to leave the scene of the crime," not a case in which Holmes was "traveling in her vehicle at the time [her ex] fired the gun, thus making [her ex-boyfriend's] position in relation to [Holmes] depend[e]nt on the use of his vehicle." *Id*. at 1026–27.

At the outset, there is a key distinction between *Holmes* and the facts at bar.[9] Here, Harrison's car was in drive and operational during the shooting, whereas in *Holmes*, the victim's vehicle was parked and on the side of the road. Therefore, in *Holmes*, the assailant did not need the use of his vehicle to put himself in a position to shoot the victim. The assailant could have spotted the vehicle while on foot, walked up to the window, and shot the victim. *See Howser*, 309 S.C. at 273, 422 S.E.2d at 108 ("This is not a case in which *the assailant merely used the vehicle to provide transportation to the situs of the shooting* . . . . Nor is it a case where *the assailant happened, incidentally, to be sitting in a stationary vehicle at the time of the attack*." (emphases added)). Conversely, Redman could not have kept pace with Harrison's car and positioned himself to shoot her but for his use of the automobile.

Moreover, in explaining its conclusion, the district court focused on the victim's lack of mobility in distinguishing *Holmes* from scenarios like the one at bar. The court noted that the ex-boyfriend merely used his vehicle to position himself next to Holmes's stationary vehicle before shooting her. *See Holmes*, 786 F. Supp.2d

---

[9] Furthermore, we note that a federal district court's interpretation of South Carolina insurance law is not binding on this court. *See Unisun Ins. Co. v. Hertz Rental Corp.*, 312 S.C. 549, 552, 436 S.E.2d 182, 184 (Ct. App. 1993) ("A contract of insurance is governed by the law of the state in which [the] application for insurance was made, the policy delivered, and the contract formed."); *see also Santee River Cypress Lumber Co. v. Query*, 168 S.C. 112, 117, 167 S.E. 22, 24 (1932) ("We are not bound by the construction placed upon [a state s]tatute by any [f]ederal [c]ourt, and the [f]ederal [c]ourts should adopt and follow our construction."); *Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*, 377 S.C. 217, 237, 659 S.E.2d 213, 223 (Ct. App. 2008), *rev'd on other grounds*, 386 S.C. 108, 687 S.E.2d 29 (2009) (providing that an appellate court is not bound to follow a federal court's interpretation of South Carolina law).

at 1026–27. Thus, the vehicle was not an active accessory to the shooting because once the ex-boyfriend was in position to shoot Holmes, regardless of how he reached that position, he did not need the use of his vehicle to maintain his ability to shoot Holmes. Conversely, the district court explained that had Holmes's car been in motion, the ex-boyfriend's position in relation to Holmes would have been *dependent* on the use of his vehicle. *Id*. at 1026–27. In other words, a would-be assailant would be incapable of maintaining a close position from which to attack a mobile driver but for the use of the assailant's vehicle.

Respondents argue the facts at bar mirror those in *Holmes* because Harrison's vehicle was stationary when Redman shot her. Thus, Respondents argue, Redman could have walked up and shot Harrison without the use of his vehicle. However, Respondents' argument rests on the notion that Redman could have waited at the corner of the intersection with a rifle and approached Harrison on foot. This argument ignores the fact that Redman used his vehicle to drive from the point where he first spotted Harrison, while keeping pace with her vehicle, to the point where he shot her at the stoplight. Accordingly, Harrison's momentary stop at the stoplight is distinguishable from the operation of the car in *Holmes*, which was in park and whose engine was turned off at the time of the assault. This difference is highlighted by the fact that Harrison's vehicle, with engine running and in drive, rolled through the intersection after she was shot.

Respondents also argue that Redman could have put his car in park at the stoplight, exited, shot Harrison, and fled the scene on foot. Thus, Respondents argue that Redman's use of the vehicle did not contribute to the assault. However, while the assailant in *Holmes* could have parked before attacking his victim, he did not need his vehicle to put himself in a position to shoot the victim because the victim was sitting in a vehicle that was turned off and stationary. Conversely, Redman would not have been able to keep pace with Harrison from the moment he spotted her until the moment he shot her but for the use of his vehicle. Therefore, the fact that Harrison's vehicle was operational and in drive distinguishes the facts at bar from *Holmes*.

B) Mere situs of the injury

The Estate argues the circuit court erred in finding Redman's vehicle was "merely the site from which he fired the gun." Respondents argue the circuit court finding was proper. Respondents further assert Harrison's vehicle is the mere situs of her injury.

Respondents assert the facts of this case are similar to the facts of *Holmes* because Redman merely used his vehicle to approach Harrison's vehicle, stop, and fire at Harrison. This argument mirrors Respondents' previous argument that Redman's vehicle was not an active accessory to the assault because he could have approached Harrison on foot. Thus, Respondents argue that because the car was not necessary to the assault, it is the mere situs from which Redman fired the weapon. *See Holmes*, 786 F.Supp.2d at 1027 ("[The ex] *merely used his car to approach Plaintiff*, stopped his car next to her parked car, fired several gunshots at Plaintiff, and drove off." (emphasis added)). However, this argument ignores the fact that Redman used his vehicle to drive from the point where he first spotted Harrison to the point where he shot her at the stoplight while also keeping pace with her vehicle. *See Howser*, 309 S.C. at 273, 422 S.E.2d at 108 ("This is not a case in which *the assailant merely used the vehicle to provide transportation to the situs of the shooting* . . . . Nor is it a case where *the assailant happened, incidentally, to be sitting in a stationary vehicle at the time of the attack*." (emphases added)).

Respondents also argue Harrison's vehicle is the mere situs of her injury, arguing the facts of the case at bar are comparable to the facts in *Wright v. North Area Taxi, Inc.*, 337 S.C. 419, 523 S.E.2d 472 (Ct. App. 1999). In *Wright*, this court determined a taxi cab was merely the situs of the driver's injury. *Id*. at 425, 523 S.E.2d at 475. One night while the driver was working, she picked up two men who, in a planned and joint effort, attempted to rob the driver while they were occupying her taxi. *Id*. at 422, 523 S.E.2d at 473. The driver was shot during the robbery and crashed into a parked vehicle. *Id*. The driver eventually died from her injuries. *Id*. This court found that the driver's taxi "served merely as the situs of the shooting." *Id*. at 425, 523 S.E.2d at 475. The court further explained that, "[t]he required causal connection does not exist when the only connection between an injury and the insured vehicle's use is the fact that the injured person was an occupant of the vehicle when the shooting occurred." *Id*.

We find the case at bar easily distinguishable from *Wright*. First, in *Wright*, the plaintiffs were not seeking coverage under an uninsured motorist provision of their own policy. Rather, the plaintiffs sought coverage from the driver's taxi company as a self-insurer. *Id*. 422, 523 S.E.2d at 473. Second, the assault was not facilitated by the use of an uninsured vehicle. Rather, the assailants entered the victim's self–insured taxi before the assault occurred. Third, the assailants and the victim were all located in the same vehicle when the assault occurred. Thus, the taxi was merely the scene of the assault. As such, this court found that the mere fact that the injury occurred in the taxi cab rather than on the street was not enough to invoke coverage. Here, Redman shot Harrison from his own vehicle rather than from within

her own vehicle. Accordingly, we do not agree that the findings in *Wright* apply to the facts at bar.

C) Foreseeably identifiable injuries

The Estate argues the circuit court erred in finding Harrison's death was not foreseeably identifiable with the use of Redman's vehicle. Respondents argue the circuit court's finding is proper because a gunshot injury is not foreseeably identifiable with the normal use of an automobile.

Respondents cite *Bookert* for the proposition that gunshot injuries are not "'foreseeably identifiable with the normal use of an automobile.'" 337 S.C. at 293, 523 S.E.2d at 182. Bookert's son Michael was with some friends and stopped at a Hardee's restaurant, where two soldiers and fifteen other young men became involved in an altercation. *Id*. at 292, 523 S.E.2d at 181. Michael and his friends left and went to a McDonald's restaurant, as did the fifteen men from the Hardee's. *Id*. The two soldiers were armed and picked up a third soldier before driving to the McDonald's in search of the men from Hardee's. *Id*. As Michael was about to walk into the McDonald's, he heard the soldiers yelling and turned in their direction. *Id*. The soldiers' vehicle was stopped in the traffic lane with the motor running, and one soldier stood in the back holding a shotgun while the front passenger brandished a handgun. *Id*. The vehicle jerked forward, and the soldier wielding the shotgun fell and fired his gun. *Id*. The shotgun pellets did not hit Michael, but while the vehicle was still moving forward, the front passenger shot Michael, striking him with a bullet in each leg. *Id*. at 292–93, 523 S.E.2d at 181–82. Our supreme court ultimately found that Michael's injuries were not "'foreseeably identifiable with the normal use of an automobile.'" *Id*. at 293, 523 S.E.2d at 182. Notably, however, our supreme court did not overrule *Howser*, in which the court found a causal connection between the use of the vehicle and the injuries suffered by the victim of a vehicle-to-vehicle shooting.

At the outset, the facts at bar are distinguishable from *Bookert*. Notably, Michael was on foot when he was assaulted. Thus, the facts in *Bookert* are consistent with *Holmes* and *Wright*, in which the assailant's ability to carry out the attack was not dependent on the use of the vehicle. *See Howser*, 309 S.C. at 273, 422 S.E.2d at 108 ("This is not a case in which *the assailant merely used the vehicle to provide transportation to the situs of the shooting* . . . . Nor is it a case where *the assailant happened, incidentally, to be sitting in a stationary vehicle at the time of the attack*." (emphases added)). As such, the assailant's use of the vehicle did not contribute to the assault because the assailants could have carried out the same attack after approaching on foot. Conversely, but for the use of his vehicle, Redman would not

have been able to keep pace with Harrison from the point he spotted her to the stoplight where he shot her.

Additionally, we disagree with the proposition that *Bookert* created a bright line rule that gunshot injuries are not foreseeably identifiable with the normal use of an automobile. As previously mentioned, the *Bookert* court did not overrule *Howser*. Therefore, we must assume the fact that an assailant fired a gun from an automobile does not automatically defeat coverage by the automobile's insurer. Accordingly, we conclude that the holding in *Bookert* is limited to the facts of that case. Turning to the case at bar, the facts are more consistent with the vehicle-to-vehicle shooting in *Howser* than the vehicle-to-pedestrian shooting in *Bookert*. Consequently, we conclude that Redman's assault was foreseeably identifiable with the normal use of an automobile.

Based on the foregoing, we find that Redman's vehicle was an active accessory to the shooting and more than the mere situs of the attack or injury. Additionally, pursuant to *Howser*, we conclude that Harrison's death was foreseeably identifiable with the normal use of a vehicle. *See Bookert*, 337 S.C. at 293, 523 S.E.2d at 182 (indicating that a "causal connection means: a.) the vehicle was an 'active accessory' to the assault; and b.) something less than proximate cause but more than [the] mere site of the injury; and c.) that the 'injury must be foreseeably identifiable with the normal use of the automobile'"). Accordingly, the circuit court erred in finding that there was no causal connection between Redman's use of his vehicle and Harrison's death.

## II.    Intervening act of independent significance

The Estate argues the circuit court erred in concluding that Redman's act of shooting Harrison was an intervening act of independent significance that broke any causal connection between the use of the vehicle and the assault. Respondents argue the circuit court's conclusion was proper. We agree with the Estate.

"Once causation is established, the court must determine if an act of independent significance occurred breaking the causal link." *Howser*, 309 S.C. at 273, 422 S.E.2d at 108. "If the injury was directly caused by some independent or intervening cause wholly disassociated from, independent of or remote from the use of the automobile, the injury cannot be said to arise out of its 'use.'" *Hite v. Hartford Acc. & Indem. Co.*, 288 S.C. 616, 621, 344 S.E.2d 173, 176 (Ct. App. 1986).

> Even if there is some remote connection between the use
> of the automobile and the injury complained of, if the

injury is directly caused by some independent act or intervening cause wholly disassociated from, independent of, and remote from the use of the automobile, the injury is not the result of the 'use' of an automobile.

*Id*. at 621, 344 S.E.2d at 176–77.

In *Howser*, our supreme court found the unknown driver's gunshot was not an intervening act of independent significance. 309 S.C. at 274, 422 S.E.2d at 109. The court explained that "the unknown driver's use of his vehicle and the shooting were inextricably linked as one continuing assault." *Id*. Similarly, in *Towe*, the supreme court found the use of the vehicle and the passenger's throwing of the bottle were "'inextricably linked' as one continuing act." *Towe*, 314 S.C. at 108, 441 S.E.2d at 827.

Conversely, in *Wright*, this court found the gunmen's shooting was an intervening act of independent significance that broke any causal connection between the vehicle and the driver's injuries. 337 S.C. at 427, 523 S.E.2d at 476. This court found that "[t]he fatal injuries that [the driver] sustained were unrelated to any use of the vehicle." *Id*. The court further explained that "[t]he same injuries could have occurred when the vehicle was parked, or otherwise not moving, or when [the victim] or the gunmen were standing outside of the vehicle." *Id*.

We find the facts at bar more closely resemble those of *Howser* and *Towe* because, unlike the assault in *Wright*, Redman's attack on Harrison was not "unrelated to any use of [his] vehicle." *Id*. Rather, as discussed in section I(A), Redman's position from which he shot Harrison, his ability to inconspicuously transport his rifle, and his ability to flee the scene were dependent on the use of his vehicle. Thus, Redman's "use of his vehicle and the shooting were inextricably linked as one continuing assault." *Howser*, 309 S.C. at 274, 422 S.E.2d at 109. Accordingly, the circuit court erred in concluding that Redman's act of shooting Harrison was an intervening act of independent significance that broke any causal connection between the use of the vehicle and the assault.

Based on the foregoing, we conclude: 1) there was a causal connection between Redman's vehicle and the shooting; 2) there was no act of independent significance breaking the causal link; and 3) the vehicle was being used for transportation at the time of the assault. *Aytes*, 332 S.C. at 33, 503 S.E.2d at 745 (indicating that an injury arises out of the ownership, maintenance, or use of an uninsured vehicle if 1) there exists a causal connection between the vehicle and the injury; 2) no act of independent significance breaks the causal link; and 3) the vehicle

is being used for transportation at the time of the assault).  Therefore, the circuit court erred in concluding that Harrison's death did not arise out of Redman's ownership, maintenance, or use of his vehicle.  Thus, we hold the circuit court erred in granting summary judgment in favor of Respondents.

## CONCLUSION

Based on the foregoing, we hold the circuit court erred in concluding 1) that there was no causal connection between Redman's vehicle and the assault, and 2) that Redman's act of shooting Harrison was an intervening act of independent significance that broke any causal connection between the use of the vehicle and the assault.  Accordingly, the circuit court's grant of summary judgment in favor of Respondents is **REVERSED** and the case is **REMANDED** to the circuit court for further proceedings.

**LOCKEMY, CJ., and HEWITT, J., concur.**[10]

---

[10] We decide this case without oral argument pursuant to the Supreme Court's order regarding the operation of the appellate courts during the Coronavirus Emergency, dated March 20, 2020, and Rule 215, SCACR.  *See RE: Operation of the Appellate Courts During the Coronavirus Emergency* (S.C. Sup. Ct. Order dated March 20, 2020, amended May 29, 2020).